Matthew J. Morrison (Bar No. 14562)
MORRISON LEGAL SOLUTIONS
1887 N 270 E
Orem UT 84057
(801) 845-2581
matt@oremlawoffice.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

**CASE NO.: 2:24-cv-00716-DBB-DAO**

| | |
|---|---|
| DONALD MELTON,<br>WARREN KETTLEWELL,<br>ALEX O. ALIKSANYAN,<br>THOMAS GRBELJA,<br>VINCENT SPERO,<br>AND WILLIAM MCLEOD<br><br>Plaintiff<br><br>v.<br><br>RENEWABLE INNOVATIONS, INC.,<br>RENEWABLE INNOVATIONS CORP.,<br>ROBERT L. MOUNT,<br>LYNN BARNEY, &<br>FNA GROUP INC. | CLASS ACTION COMPLAINT |

**<u>AMENDED CLASS ACTION COMPLAINT</u>**

Plaintiffs, Donald Melton, Warren Kettlewell, Alex O. Aliksanyan, Thomas Grbelja, Vincent Spero and William McLeod (collectively "Plaintiffs"), allege the following upon information and belief, except for those allegations as to their own acts, which are based upon their respective personal knowledge, against Renewable Innovations, Inc. and Renewable Innovations Corp. (collectively, "Renewable Innovations" or "the Company"), Robert L. Mount, as its chief executive officer ("CEO"), controlling shareholder, President and Director, and Lynn Barney as its Chief Financial Officer ("CFO"), controlling shareholder, Secretary and Director, and against FNA

Group Inc. ("FNA"). Plaintiffs' information and belief is also based on, among other things, the independent investigation of their counsel. This investigation included, but was not limited to, a review and analysis of: (a) Renewable Innovations' public filings with the Securities and Exchange Commission ("SEC"); (b) research reports by securities and financial analysts; (c) other publicly available presentations by Renewable Innovations; (d) Renewable Innovations' press releases; (e) news and media reports concerning Renewable Innovations and other facts related to this action; (f) data reflecting the pricing and trading volume of Renewable Innovations common shares; and (g) other publicly available material and data, including as identified herein.

## NATURE OF THE ACTION

1. The Plaintiffs are filing a class action lawsuit on behalf of themselves and all individuals who purchased common stock in Renewable Innovations Inc. ("RII"), including shares held as depositary receipts. This class action addresses the period from December 1, 2022, to RII's delisting from all trading platforms. The delisting was the direct result of intentional omissions, particularly the failure to comply with SEC filing obligations as of September 14, 2023, and the subsequent forms to secure financing. This situation was part of a strategy from the individual Defendants to enable FNA's acquisition of RII's assets in October 2024 at a discount and in a manner that wiped out the shareholder value while enriching themselves. As such, the entire duration of this timeline will be referred to as the "Class Period."

2. In December 2022, Renewable Innovations' stock peaked at $2.50 per share, resulting in a fully diluted market capitalization of roughly $582 million. However, the subsequent acquisition of RII's assets took place at a substantial discount, benefitting and enriching the Defendants: FNA, Robert Mount (the Chief Executive Officer and principal shareholder), and Lynn Barney (the Chief Financial Officer and a significant shareholder). This acquisition bolstered

their financial standing and improved competitive capabilities in the market, ultimately to the complete financial detriment of RII shareholders. In effect, the Defendants orchestrated a strategic pivot, taking the Company private through a spin-off arrangement that generously compensates the Defendants while leaving shareholders to admire the clever maneuver from a distance—empty-handed

3. Renewable Innovations, Inc., a Delaware corporation, was incorporated on June 28, 2019, and began operations in 2021. On December 1, 2022, pursuant to an Agreement and Plan of Merger, Renewable Innovations, Inc. was acquired by Nestbuilder.com Corp., a Nevada corporation. The acquisition was executed through the merger of NB Merger Corp. (a subsidiary of Nestbuilder.com Corp.) into Renewable Innovations, Inc., with Renewable Innovations, Inc. surviving as a wholly owned subsidiary. Following the merger, Renewable Innovations, Inc. (the Delaware subsidiary) changed its name to Renewable Innovations Corp, and Nestbuilder.com Corp. (the Nevada parent) changed its name to Renewable Innovations, Inc.

4. Thereafter, and at all times material hereto, Renewable Innovations, Inc. was incorporated in the State of Nevada, Renewable Innovations Corp. was incorporated in the State of Delaware, and Renewable Innovations maintains a principal place of business in Lindon, Utah.

5. At all times material hereto, Renewable Innovations was focused on designing, optimizing, developing, and producing modular, scalable, zero-carbon green renewable solutions. Renewable Innovations represented to the public that its initial focus was on mobile and stationary electric vehicle rapid charging. Renewable Innovations represented to the public that it held a competitive advantage as a result of its deep engineering expertise, history in power, and market vision and combined those with industry leaders through collaboration agreements for the best product, best price, and best availability. In this regard, Renewable Innovations provided the public


**MORRISON LEGAL SOLUTIONS**
1887 North 270 East - OREM, UTAH 84057 - 801-845-2581

with one example of this an alleged collaboration agreement with General Motors ("GM") for its fuel cells and batteries, a collaboration that never came to fruition or provided any financial benefit to the shareholders.

6. To attract and generate public investment, Renewable Innovations represented its commitment to harnessing the expected growth of the hydrogen market. The Company also represented its method, which focuses on the ongoing design and development of advanced stationary power systems utilizing hydrogen fuel cell technology. This strategy highlighted the incorporation of innovative design concepts and state-of-the-art engineering to improve the efficiency and feasibility of hydrogen as a clean energy resource. The Company painted a thrilling picture to the public and its shareholders of groundbreaking proprietary technology poised to revolutionize a booming market, but the masterpiece remained a sketch, with promises fading into unfulfilled potential

7. Beginning in 2023, Defendants Barney and Mount orchestrated a strategy that favored their own interests over those of the shareholders. They facilitated a vulture investor[1], FNA Group, Inc. ("FNA"), by entering into an exclusivity agreement that allowed FNA to formulate a lopsided contract during a time period in which the class members were unable to trade their stock as a result of the Individual Defendants failure to comply with SEC reporting requirements. This contract was heavily skewed in favor of prioritizing the repayment of the Company's loans to the Individual Defendants, and the Company's dealings, negotiations, and terms with FNA were hidden from the public because the Individual Defendants made the strategic

[1] A vulture fund is a type of investment fund that targets undervalued assets, primarily focusing on distressed securities like high-yield bonds nearing default or equities of companies approaching bankruptcy. These funds aim to capitalize on acquiring these underpriced securities, which are often perceived as having been oversold. The strategy involves taking calculated risks with the potential for significant returns, leveraging the inherent volatility and mispricing in distressed financial situations to generate high-yield opportunities. To achieve this strategy, a vulture fund invests in assets whose prices have been severely depressed in the market.

choice to unlawfully allow the Company to go “dark” with its SEC reporting obligations- a move that further prevented the shareholders from offloading their stock during this period cloaked in secrecy.

8. This arrangement enabled FNA to acquire RII's assets at a significantly lower valuation. The Defendants, including FNA, gained substantial benefits from this arrangement, which severely harmed their unsuspecting shareholders. This collaboration used deceptive practices to conceal the adverse effects on the shareholders' interests.

9. As explained below, FNA collaborated with Defendants Mount and Barney to effectuate substantial personal financial enrichment at the detriment of shareholder equity. The implicated parties systematically obscured FNA's stakes in RII's valuable assets and intellectual property within this stratagem. This concealment was unlawful as it relates to the Company’s public reporting obligations and facilitated their operations free from oversight following the Company’s delisting, allowing them to maneuver without the usual regulatory or investor scrutiny.

10. In October 2024, once the FNA transaction was complete, Defendants Barney and Mount had their investments and loans in Renewable Innovations materially paid off from FNA’s purchase, all at the expense of the other shareholders who received no value from the FNA transaction. Thus, these individual Defendants used the FNA transaction to prioritize their economic interests at the expense of the other shareholders. FNA used this maneuver as a means to acquire the valuable Company assets at a significant discount relative to the payment that would have been required to take control of the Company when its stock was publicly tradeable. FNA scooped up the public company for mere pennies on the dollar, transforming it into a private entity liberated from public investors, SEC oversight, and the watchful eye of regulators.

11. It is clear that Directors Mount and Barney deliberately hid their misconduct from

the public market and prospective private investors. This intentional concealment led them to abandon conventional methods and practices for raising capital and the standard investment terms. Instead, they devised a scheme in collaboration with FNA, transferring nearly all of Renewable Innovations' assets to FNA. This tactic was designed to obscure their wrongdoing and ensure repayment of the individual Defendants' outstanding loans to Renewable Innovations ("the Loans"), knowing that it conflicted with their duties and obligations to their shareholders.

12. As a result of the foregoing, throughout the Class Period, Renewable Innovations' directors and officers, Mount and Barney, purposely failed to comply with their fiduciary and legal obligations by: (i) knowingly selecting an inexperienced and inadequate accounting firm with little to no experience in the preparation of financial statements for public companies to prepare the Company's financial statements, (ii) intentionally neglecting to oversee and manage the efforts of such accounting firm, and (iii) intentionally abandoning all efforts to cure their breaches, failures and gross mismanagement, which resulted in (A) the Company's delisting from the OTCQB, (B) the Company's loss of access to the public capital markets to raise capital, (C) the shareholders' complete loss of their ability to sell their shares in reliance on Rule 144 of the Securities Act of 1933, as amended, and (D) substantial harm to the shareholders of Renewable Innovations.

13. Additionally, it has become evident that Mount and Barney violated their fiduciary and legal responsibilities during the Class Period and afterward. They knowingly and significantly breached legal agreements with Renewable Innovations' customers by using customer deposits for their benefit rather than purchasing parts and materials necessary to fulfill customer orders. As a result, Renewable Innovations failed to fulfill customer orders, resulting in materially reduced customer purchase orders and substantial financial harm to its shareholders. Thereafter, FNA acquired the public company assets free from the preexisting Company debt and obligations. The

price of this 'incredible deal' was covering the Individual Defendants' loans to the Company, while every other shareholder and creditor was wrung out to dry.

## JURISDICTION AND VENUE

14. This action arises under Sections 10(b) (15 U.S.C. § 78j(b)) and 20(a) (15 U.S.C. § 78t(a)) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., and Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder by the SEC and is brought on behalf of investors who purchased Renewable Innovations shares privately or on the open market during the Class Period.

15. In connection with the acts alleged herein, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including the United States mail and facilities of a national exchange.

16. Jurisdiction is conferred upon this Court by Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331. This action arises out of the laws of the United States. The Courts of the United States have exclusive jurisdiction of claims brought under the Exchange Act under 15 U.S.C. § 78aa.

17. This Court has personal jurisdiction over Defendants pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Defendants have sufficient contacts with the United States through their regular and substantial transaction of business therein and exercising jurisdiction over those Defendants is reasonable.

18. Venue is proper in this District because many of the acts and transactions constituting the violations of law herein complained of occurred within this District, including the preparation and dissemination of materially false and misleading statements and corporate


**MORRISON LEGAL SOLUTIONS**
1887 North 270 East - OREM, UTAH 84057 - 801-845-2581

documents.

**PARTIES**

19. Plaintiff Donald Melton is a resident of South Carolina. As set forth in the attached certification, Plaintiff Melton is the owner of 125,000 shares of stock. Plaintiff Melton commenced acquiring his stares on February 28, 2022. Plaintiff Melton made the purchases on the integrity of the market for Renewable Innovations common stock at artificially inflated prices and was damaged upon delisting all the stock series.

20. Plaintiff Warren Kettlewell is a resident of Ontario, Quebec, Canada. As set forth in the attached certification, Plaintiff Kettlewell is the owner of 495,570 shares of stock. Plaintiff Kettlewell commenced acquiring his stares on February 2, 2022. Plaintiff Kettlewell made the purchases in reliance on Defendants' materially false and misleading statements and omissions of material facts and on the integrity of the market for Renewable Innovations common stock at artificially inflated prices and was damaged upon the delisting of all the series of stock.

21. Plaintiff Alex O. Aliksanyan is a resident of New York. As set forth in the attached certification, Plaintiff Aliksanyan is the owner of 3,198,036 shares of stock which includes warrants of 2,525,000 shares. Plaintiff Aliksanyan commenced acquiring his stares on August 20, 2019. Plaintiff Aliksanyan made the purchases in reliance on Defendants' materially false and misleading statements and omissions of material facts and on the integrity of the market for Renewable Innovations common stock at artificially inflated prices and was damaged upon the delisting of all the stock series.


**MORRISON LEGAL SOLUTIONS**
1887 North 270 East - OREM, UTAH 84057 - 801-845-2581

22. Plaintiff Aliksanyan suffered losses of approximately $1,500,000 as a result of Defendants' federal securities law violations and the materially false and misleading statements and omissions alleged herein.

23. Plaintiff Thomas Grbelja is a resident of New Jersey. As set forth in the attached certification, Plaintiff Grbelja is the owner of 2,606,334 shares of stock which includes warrants of 2,025,000 shares. Further, Plaintiff Grbelja also bought an additional 325 shares of stock during the proposed class period. Plaintiff Grbelja commenced acquiring his shares on August 20, 2019. Plaintiff Grbelja made the purchases in reliance on Defendants' materially false and misleading statements and omissions of material facts and on the integrity of the market for Renewable Innovations common stock at artificially inflated prices and was damaged upon the delisting of all the stock series. Plaintiff Grbelja suffered losses of approximately $1,200,000 as a result of Defendants' federal securities law violations and the materially false and misleading statements and omissions alleged herein.

24. Plaintiff Vincent Spero is a resident of New Jersey. As set forth in the attached certification, Plaintiff Spero is the owner of 14,783 shares of stock, which he bought in the open market between the time period of May 3, 2023, and May 23, 2023, all of which remains untradeable and without the ability. Plaintiff Spero made the purchases in reliance on Defendants' materially false and misleading statements and omissions of material facts and on the integrity of the market for Renewable Innovations common stock at artificially inflated

25. Plaintiff William McLeod is a resident of South Carolina. As set forth in the attached certification, Plaintiff McLeod is the owner of 1,273,882 shares of stock which includes warrants of 575,000 shares. Plaintiff McLeod commenced acquiring his stares on August 20, 2019. Plaintiff McLeod made the purchases in reliance on Defendants' materially false and misleading

statements and omissions of material facts and on the integrity of the market for Renewable Innovations common stock at artificially inflated prices and was damaged upon the delisting of all the series of stock. Plaintiff McLeod suffered losses of approximately $586,000 as a result of Defendants' federal securities law violations and the materially false and misleading statements and omissions alleged herein.

26. Defendant Renewable Innovations is a renewable energy company headquartered in Lindon, Utah, and incorporated in Nevada. Renewable Innovations provides services in all fifty states, including within this District.

27. Defendant FNA Group Inc. is a private company headquartered in Pleasant Prairie, Wisconsin, and incorporated in Illinois.

28. Defendant Mount has served as the Company's CEO, President, and Director at all times material hereto.

29. Defendant Barney has served as the Company's CFO, Secretary, and Director at all times material hereto.

30. At all times material hereto, Defendant Mount and Defendant Barney maintained beneficial ownership of our common stock and common stock with over 87% of the shareholder votes combined. As a result, they were able to control all material matters affecting the Company shareholders, including the election of Company directors, the acquisition or disposition of Company assets, and the future issuance of our shares. Investors who purchased the Company's stock entrusted all aspects of operational control to the Company's management team. Mount and Barney further controlled the decision to obtain vulture debt funding that allowed their loans to the Company to be repaid to the detriment of all other shareholders, including Plaintiffs.

31. Defendants Mount and Barney are collectively referred to herein as the "Individual

Defendants".

32. The Individual Defendants are and were a controlling group of Renewable Innovations at the time of the statements complained of herein, directly or indirectly owning a majority of the common stock of Renewable Innovations. As such, they jointly filed and certified under the relevant Securities laws all of the Company's public statements and disclosures, including the Company's last 10-K filed on June 9, 2022, and the following 8-K reports filed on June 23, 2023, September 6, 2023, and September 11, 2023.

33. The Company and the Individual Defendants have failed to file any required public disclosures or information since their last 8-K, filed on September 11, 2023, which disclosed the intention to hire a new accounting firm.

34. As set forth in this lawsuit, Renewable Innovations and the Individual Defendants have: (a) failed to file a Form 8-K, issue a press release or otherwise disclose the extent of the Company's inadequate accounting practices, inaccurate financial reporting and disputes with its accountant and auditor, (b) failed to file a Form 8-K, issue a press release or otherwise disclose that the Company was using customer deposits to pay salaries of management and their affiliates and to cover day-to-day expenses rather than to purchase the parts and materials necessary to fulfill customer contracts, (c) failed to file a Form 8-K, issue a press release or otherwise disclose that a large customer, General Motors, had materially reduced its purchase orders with the Company, and (d) failed to file a Form 8-K, issue a press release or otherwise disclose that they were accepting vulture funding loans from FNA which would repay the Individual Director loans to the Company to the detriment of the other shareholders, including Plaintiffs.

## CLASS ACTION ALLEGATIONS

35. Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(3) of

the Federal Rules of Civil Procedure on behalf of himself and persons who purchased or owned any series of Renewable Innovations common stock privately or on the open market on a U.S. stock exchange during the Class Period and were damaged as a result of Defendants' delisting of the common stock. Excluded from the Class are Defendants, present and former executive officers of Renewable Innovations and any parent, subsidiary, or affiliate of Renewable Innovations, and the Individual Defendants' immediate family members (as defined in 17 C.F.R. § 229.404, Instructions (1)(a)(iii) and (1)(b)(ii)), and the legal representatives, heirs, successors, or assigns of any such excluded person.

36. The members of the Class are so numerous that the joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe there are thousands of Class members. Many millions of shares of each series of common stock were issued, outstanding and purchased during the Class Period. Each series of Renewable Innovations common stock was actively traded on the OTCQB Exchange[2] throughout the Class Period, and each series traded on every day of the Class Period. Members of the Class may be identified from records maintained by Renewable Innovations or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37. Plaintiffs' claims are typical of the Class members' claims as all members of the Class are similarly affected by Defendants' wrongful conduct, which constitutes a violation of federal law as it is complained of herein.

[2] The OTCQB, also called the Venture Market, represents the mid-tier segment of the Over The Counter (OTC) equity markets, primarily catering to early-stage and growth-oriented companies in both the U.S. and international arenas. This marketplace is designed for companies that are in the development phase, offering them greater visibility and access to investors while adhering to specific reporting standards, thereby facilitating the capital-raising process for emerging enterprises.

38. Plaintiffs will fairly and adequately protect the interests of the members of the Class.

39. Plaintiffs have retained competent counsel experienced in class action litigation under the federal securities laws to ensure such protection further; they are members of the Class; their claims are typical of the claims of all Class members; and they do not have interests antagonistic to, or in conflict with, those of the Class.

40. There are numerous questions of law and fact that are common to the Class and predominate over any questions affecting individual members of the Class, including:

a. Whether the federal securities laws were violated by Defendants' acts as alleged herein;

b. Whether Defendants misrepresented or omitted material facts concerning their plans regarding the continued listing of Renewable Innovations common stock;

c. Whether Defendants' statements omitted material facts necessary to make the statements made not misleading in light of the circumstances under which they were made;

d. Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e. Whether the prices of Renewable Innovations' common shares were artificially inflated during the Class Period; and

f. Whether members of the Class were damaged by virtue of their investments in Renewable Innovations' common shares during the Class Period, and if so, the appropriate measure of damages.

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since a multiplicity of actions could result in an unwarranted burden on the Court system and could create the possibility of inconsistent judgments. Moreover, a class action will allow redress for many persons whose claims would otherwise be too small to litigate individually. There will be no difficulty in managing this action as a class action.

## GENERAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### The Common Stock

42. Renewable Innovations, Inc., a Delaware corporation, was incorporated on June 28, 2019, and commenced operations in 2021. On December 1, 2022, pursuant to an Agreement and Plan of Merger, Renewable Innovations, Inc. was acquired by Nestbuilder.com Corp., a Nevada corporation, through the merger of NB Merger Corp. with and into Renewable Innovations, Inc., with Renewable Innovations, Inc. continuing as the surviving wholly owned subsidiary of Nestbuilder.com Corp. Renewable Innovations, Inc., a Delaware corporation (the wholly owned subsidiary), changed its name to Renewable Innovations Corp., and Nestbuilder.com Corp. (the parent corporation) changed its name to Renewable Innovations, Inc. The Company discontinued the historical business of Nestbuilder.com on February 28, 2023.

43. At all times material hereto, Renewable Innovations represented to the public that its initial focus was on mobile and stationary electric vehicle rapid charging. Renewable Innovations represented to the public that it held a competitive advantage due to its deep engineering expertise, history in power, and market vision and combined those with industry leaders through collaboration agreements for the best product, best price, and best availability. In this regard, Renewable Innovations provided the public with one example of this an alleged collaboration agreement with General Motors ("GM") for its fuel cells and batteries.

44. At all times material hereto and from February 2023 onward, the Individual

Defendants were the only members of the board of directors for the Company which gave them considerable control and access to make key decisions on behalf of the Company and to conduct the scheme set forth in this lawsuit.

45. To solicit investment from the public, Renewable Innovations represented that it was focused on taking advantage of the projected growth of the hydrogen market by continuing to design and build stationary power systems using hydrogen fuel cells. Renewable Innovations further reassured investors by highlighting its status as a publicly traded company, underscoring the transparency, regulatory compliance, and liquidity benefits associated with its listing.

46. The listing and the continuation of that listing of the series of common stock on the publicly traded exchange was such a critical component of the Company's business objectives and as a critical inducement to obtain shareholders to invest into the Company. These representations were integral to fostering investor confidence and encouraging the public to commit substantial financial resources to the Company's growth and development.

47. Listing of a stock on a national securities exchange is an important feature to investors, the absence of which adversely affects the market and trading price of the stock. Listing on a national securities exchange triggers a company's reporting requirements under the Securities Exchange Act of 1934. Such reporting requirements provide stockholders with material information about their stocks. The listing also provides stockholders with a liquid trading market. Notably, most institutional investors cannot invest in unlisted securities. Most brokerage houses cannot trade unlisted securities for their clients. Investing in delisted securities is thus possible for only a very small universe of investors through a very limited number of financial intermediaries. The delisting of a security adversely impacts its liquidity, transferability, and, most importantly, its price.


**MORRISON LEGAL SOLUTIONS**
1887 North 270 East - OREM, UTAH 84057 - 801-845-2581

48. The investing public depends heavily on the protections that come with being listed on a public exchange. A public listing helps maintain the liquidity of shares and provides reassurance to stockholders and potential buyers that the company is meeting its reporting requirements. Trading on a national exchange carries implicit guarantees of trustworthiness, financial stability, fair disclosure, and ensures that investors will be treated equitably and according to the law. Additionally, public listings typically require that most board directors be independent.

**THE INDIVIDUAL DEFENDANTS WERE RESPONSIBLE FOR RII'S FAILURE TO COMPLY WITH THE SEC REPORTING REQUIREMENTS**

49. As of April 19, 2023, Renewable Innovations experienced a significant lapse of 31 days without submitting any requisite documentation. This prolonged absence of compliance served as an initial indication that the Defendants were strategically orchestrating actions to enable FNA's acquisition of its assets throughout the Class Period, simultaneously obscuring their underlying intentions.

50. On June 1, 2023, the individual Defendants submitted a Form 8-K to address significant oversight failures and reduce liability exposure. This action was a strategic move to mitigate scrutiny regarding their motivations and rectify the identified shortcomings in their governance practices.

51. In this 8-K submission, the individual Defendants unequivocally stated their non-reliance on prior filings, making a definitive effort to clarify and dissociate themselves from any previous inaccuracies. It is crucial to emphasize that every SEC disclosure cited to support this action has been duly signed and certified by the Individual Defendants, reinforcing the legitimacy of their statements.

52. Over a challenging 31-day period, the Company's stock plummeted by an alarming 29.2%. This significant downturn led to a substantial reduction in market capitalization, amounting

to roughly $56.4 million. The steep decline severely impacted on the Company's overall valuation and financial health, raising concerns among investors and stakeholders alike.

53. The OTCQB granted Renewable Innovations the opportunity to address and rectify its filing deficiencies; however, Mount and Barney did not take the necessary actions to remediate these issues.

54. On November 2, 2023, Renewable Innovations announced that its Board of Directors, which included the individual Defendants implicated in the matter, had determined that the financial statements for the quarter ending February 28, 2023, were no longer reliable due to identified errors. This decision directly contradicted several earlier public disclosures made by the Company and certified by the Individual Defendants for their accuracy. In light of this, Renewable Innovations also stated its intention to file a First Amended Form 10-Q/A, which would include restated financial statements and an updated Management Discussion and Analysis (MD&A) as soon as possible.

55. The need for Renewable Innovations to issue restated financial statements directly led to a drastic decline in its publicly traded stock. In the weeks that followed the announcement, which declared the Company's financial statements unreliable, the stock plummeted by 46%, resulting in an astonishing loss of approximately $65 million in market value. This decline was further underscored by trading volume, with 253,000 shares exchanged on down days, in stark contrast to only 62,000 shares previously traded on up days.

56. Ultimately, by September 14, 2023, Renewable Innovations was delisted from all trading platforms due to its non-compliance with the SEC filing requirements. This delisting had a catastrophic result for the Company's shareholders, including:

a. <u>Loss of Liquidity</u>- the stock was unable to be publicly traded;


**MORRISON LEGAL SOLUTIONS**
1887 North 270 East - OREM, UTAH 84057 - 801-845-2581

b. Decline in Value- investors perceive the delisting as a sign of instability or financial trouble, leading to reduced demand; and

c. Increased Risk- delisted stocks face less regulatory oversight, increasing risk for shareholders and including less transparency and reporting to prohibit the investors to assess the Company's performance and prospects.

57. On November 21, 2024, the SEC issued a clear order stating that Renewable Innovations has failed to comply with the requirements set forth in Section 13 of the Securities Exchange Act. Furthermore, the order unequivocally highlights that the Company has not filed any mandatory periodic reports with the SEC since the reporting period that concluded on February 28, 2023. *See REII SEC Findings November 2024 attached hereto as Ex. [A].* As a result, the SEC found it necessary to revoke the registration of all classes of securities offered by Renewable Innovations to protect investors.

58. The Individual Defendants' blatant disregard for SEC reporting guidelines directly resulted in Renewable Innovations' delisting, severely restricting the Plaintiffs and all proposed class members from trading their shares. As a direct consequence of the actions described in this lawsuit, the Plaintiffs and all shareholders have seen their investments obliterated. On the last trading day, the Company's stock plummeted nearly 30%, erasing approximately $75 million in shareholder value—a deplorable outcome that cannot be overlooked and was ultimately used to justify the FNA acquisition at a considerable discount.

59. On September 15, 2023, prior to the delisting, Renewable Innovations disclosed significant accounting irregularities that rendered its financial statements unreliable. Despite assurances from the company to reissue corrected financial statements, the Individual Defendants and Renewable Innovations did not fulfill this commitment. Consequently, the adverse revelations

related to the restatement of its financials, the escalation of loss reserves, and the announcement of an ongoing SEC investigation led to a decline in Renewable Innovations' stock price. It is worth noting that Renewable Innovations has yet to issue any restated financial statements, despite previously committing to this action

60. Renewable Innovations' delisting starkly undermined shareholder interests, as it eliminated the Company's obligation to adhere to the regulatory public disclosure requirements imposed by the Securities Exchange Act of 1934. This move not only facilitated a troubling lack of transparency but also created an environment where additional investigations into its alleged misconduct were obstructed. It was evident that for Defendants Mount and Barney, evading scrutiny was not just a byproduct but a deliberate strategy to offload the Company in a manner to get them repaid while leaving everyone else out to dry.

61. Credible information indicates that the Individual Defendants were secretly plotting to take the Company private. This maneuver would effectively abolish all necessary filings and operations required for a publicly listed company, depriving Class Members of their ability to trade shares and undermining investor confidence in the process.

62. The individual Defendants did not face the same consequences as the shareholders, as demonstrated below. Instead, they managed to receive nearly all of their invested capital through FNA's investment. This transaction benefited and enriched the individual Defendants, depleted Renewable Innovations' assets, and ultimately left the class members with no-value stock.

**The Fraudulent FNA Asset Purchase**

63. Between January and March 2024, or perhaps even earlier, Defendants Robert Mount and Lynn Barney, acting in concert with FNA Group, Inc. ("FNA"), took deliberate steps to execute their scheme to defraud the Company's shareholders.


**MORRISON LEGAL SOLUTIONS**
1887 North 270 East - OREM, UTAH 84057 - 801-845-2581

64. By April 2024, the Individual Defendants were privately telling people that the Company was unable to meet its payroll obligations or pay its rent. This urgent situation demanded immediate action from shareholders to secure financing that would stabilize the company and safeguard their investments. Some investors took decisive steps to bring a serious alternative investor to the table, one who was ready to make a substantial investment directly in Renewable Innovations for the benefit of all shareholders. This investor, however, insisted on replacing Mount with a more experienced chief executive officer. These particular shareholders successfully identified a suitable investor prepared to inject significant funds into REII, ensuring its survival and paving the way for recovery.

65. Mount, in his role as CEO, decisively and selfishly rejected the promising investment opportunity and instead moved forward with a 90-day exclusivity agreement with FNA, effectively barring REII from exploring any alternative funding sources. This exclusivity agreement effectively barred any other potential investors, guaranteeing that Renewable Innovations could negotiate and engage solely with FNA. Of course, the vast majority of the Company's shareholders were unaware of what was transpiring since none of these negotiations were disclosed in any requisite public filing or disclosure.

66. RII shareholders subsequently uncovered the underlying motivation behind the decision to pursue the partnership with FNA. As part of the exclusivity agreement, FNA committed to temporarily covering REII's operating expenses, including payroll, rent, and other liabilities, but only on the condition that REII remained exclusive to FNA. This exclusivity effectively granted FNA the leverage to impose terms that significantly favored its own interests.

67. In this context, Mount and Barney decided to forgo traditional sources of capital and customary investment terms designed to benefit the Company and its shareholders. Instead,

they pursued a scheme with FNA that would enable Renewable Innovations to promptly repay their personal loans at the expense of shareholder value. This choice prioritized their urgent financial relief, ultimately leaving no value for Renewable Innovations' shareholders.

68. During the negotiation process, FNA claimed to conduct necessary "due diligence," which included obtaining a fairness opinion from an independent third-party firm. However, the valuation produced by the accounting firm not only aligned almost perfectly with the pre-determined terms of the agreement—valuing REII's assets at $4 million, with an unsettling $2 million designated for cash—but also raised serious red flags. Most notably, the valuation was able to ignore the significantly greater market value of the Company, approximately $75,000,000 market cap, that existed before the Individual Directors' aforementioned nefarious conduct commenced. This strikingly convenient alignment strongly indicates that the valuation was manipulated by both the Directors and FNA to legitimize a fraudulent transaction rather than provide an objective and honest assessment.

69. FNA crafted an unfair agreement that clearly prioritized the repayment of loans to Mount and Barney. Under this arrangement, FNA would purchase 100% of REII's assets for $4.5 million—$2.4 million in cash and $2 million in assumed liabilities—leaving the shareholders with nothing.

70. FNA, Mount, and Barney were fully aware that this agreement was designed to provide significant personal financial benefits to Mount and Barney while effectively eliminating the shareholders' equity, and allowing FNA to acquire a public company that recently had an approximately $75,000,000 market capitalization for pennies on the dollar. The deal favored the Defendants' interests at the expense of the Company and its investors, ensuring that FNA would acquire the Company for a significant discount and the Individual Defendants' loans would be


**MORRISON LEGAL SOLUTIONS**
1887 North 270 East - OREM, UTAH 84057 - 801-845-2581

repaid while leaving the public entity devoid of assets and rendered worthless.

71. This significant financial and legal conflict was not a secret. In fact, in an email dated June 7, 2024, Director Barney candidly admitted his acknowledgment of the matter in question to Director Mount, providing clarity on the situation.

> On Jun 7, 2024, at 11:25 PM, Lynn Barney <lynn@renewable-innovations.com> wrote:
>
> Bob,
>
> As I consider this further, there is likely a conflict between you and the investment group. FNA needs you to make this work. They will cut a separate deal with you. They do not need the investors. They only need the investors stock or agreement to have a clean deal.

72. In October 2024, REII executed an agreement to sell all of its assets to FNA. This transaction marked the conclusion of the defendants' scheme, which involved transferring all of the company's valuable assets to FNA and leaving REII as a hollow shell, devoid of revenue, operations, or future prospects.

73. Furthermore, FNA has shown no interest in re-listing REII as a publicly traded Company or taking any steps to restore its viability. It is evident that FNA is perfectly happy owning REII assets without the public shareholders, SEC regulations, and public scrutiny. Furthermore, even if it were to be re-listed, Renewable Innovations would essentially be a shell Company with no assets, as all valuable property and intellectual property - have been sold to FNA. The Plaintiffs' reasonable fears have now come to pass. The defendants have orchestrated a plan to maintain a privately controlled company essentially run by FNA, enabling Mount and Barney to offload their personal debts, including $1,100,000 in debt relief for Defendant and CEO Robert Mount. As a result, the plaintiffs and similarly situated shareholders are unlikely to recover

their investments in Renewable Innovations. Ultimately, the transaction has effectively privatized REII's assets for the benefit of FNA and the Individual Defendants, leaving shareholders with no opportunity to recoup their investments.

**DEFENDANTS' UNMISTAKABLE FRAUDULENT OMISSIONS**

74. On September 15, 2023, Renewable Innovations was delisted, contrary to the Defendants' claims in their SEC filings and public statements. This delisting occurred because the Defendants failed to meet the necessary securities disclosures and requirements to remain a publicly traded company.

75. Moreover, it is evident that the individual Defendants were fully aware that the administrative costs and burdens involved in maintaining public listing status and registration far exceeded any benefits. These costs and burdens, as well as the new ownership structure, were clearly known or should have been recognized throughout the entire period. Despite their public claims that the stock would remain listed, it is unequivocal that the individual Defendants intentionally concealed critical information to further their scheme. Simultaneously, they recklessly issued false public statements to promote their agenda.

76. To fulfill their hidden objectives, they executed a strategic plan to deliberately depress RII's share prices. This manipulation effectively created an illusion that rendered the company's assets deceptively affordable, paving the way for a streamlined acquisition without raising any alarms.

77. RII delisting was effective on or September 15, 2023, and on November 21, 2024, the SEC entered its Order revoking the registration of the securities pursuant to Section 12(j) of the Securities Exchange Act of 1934.

78. The market's reaction to the delisting clearly shows the significance of the

Defendants' false and misleading statements and the harm caused to the Plaintiffs and other buyers of the common stocks.

79. The price decline was not only sharp and immediate, but the delisting decisively stripped away the financial reporting protections provided by the Securities Exchange Act of 1934. Consequently, common stockholders will no longer receive critical information about Renewable Innovations and its financial status, severely undermining the viability of any trading market for the common stock.

80. The "cost savings" from the delisting were effectively a transfer of wealth from common shareholders to the Individual Defendants and FNA. These savings clearly bolstered the bottom line of the new Renewable Innovations, enhancing profits that directly benefited the post-closing equity holders. In stark contrast, the drastic drop in the stock's value was caused by the delisting severely damaged public holders of those common shares.

81. At the time, none of the Defendants provided any indication or explanation for their actions or inactions that led to the delisting of the stock, ultimately rendering the investments of the Plaintiffs and Class Members worthless. It is now evident that this was an intentional concealment by the Defendants, part of a strategic plan to facilitate a vulture investor, FNA Group, Inc., in acquiring RII's assets at an exceptionally favorable price with a steep discount. Directors Barney and Mount, along with FNA, significantly benefited from this scheme to the severe detriment of unsuspecting shareholders.

82. Throughout the class period, the Defendants deliberately obscured FNA's intentions to acquire all of RII's assets, particularly its valuable intellectual property. By August 2024, their calculated efforts successfully culminated in FNA acquiring all of RII's assets by suppressing RII's presence in the market.


**MORRISON LEGAL SOLUTIONS**
1887 North 270 East - OREM, UTAH 84057 - 801-845-2581

83. Common stockholders were justifiably outraged and disappointed. Other investors have voiced their strong disapproval as well and have directly contacted Renewable Innovations to make their feelings known. Meanwhile, through the FNA deal, the Individual Directors unjustly walked away with a seven-figure payout, leaving the Plaintiffs and other similarly situated investors empty-handed. This is unacceptable.

**Loss Causation**

84. The Defendants clearly engaged in a scheme to deceive investors regarding both common and preferred shares during the Class Period. They misrepresented and omitted vital information about the future of these shares, including their ongoing listing on public exchange. This dishonest conduct was aimed at facilitating FNA's acquisition of RII at a dramatically reduced price.

85. Plaintiffs and other Class Members purchased or acquired Renewable Innovations' common shares based on their trust in the market price, public information about the company, and the continued listing of the shares on the exchange. However, these purchases occurred at prices that included and reflected the misrepresentations and omissions of material facts made by the Defendants, as detailed in this case.

86. The Plaintiffs and the class sustained actual economic losses and incurred damages when the foreseeable risks associated with the defendants' fraudulent scheme, along with the concealment resulting from the defendants' misstatements and omissions, were revealed following the announcement of the planned delisting of all series of common stock.

87. As a direct and immediate consequence of the announcement regarding the delisting of Renewable Innovations, the prices of all series of the company's common stock plummeted by nearly 100%. This drastic decline led to a staggering market loss that exceeded $75 million, significantly impacting shareholders and eroding the company's market value.

88. Defendants’ wrongful conduct directly and proximately caused the damages suffered by the Plaintiffs and the Class, as outlined herein. Throughout the Class Period, the prices at which the Plaintiffs and the Class purchased Renewable Innovations common stock were artificially inflated due to Defendants’ materially false and misleading statements and omissions of material facts regarding the future viability and market for Renewable Innovations’ common shares.

89. Had the Defendants disclosed complete, accurate, and truthful information during the Class Period regarding their intentions and future plans to delist the common shares, the Plaintiffs and the Class would not have purchased or acquired Renewable Innovations’ common shares, either at all or at the inflated prices they paid.

90. In the instant case, Defendants could have reasonably foreseen that engaging in fraudulent actions to promote the continued listing of the common shares on the public exchange would likely lead to increased investments and support for the Company. Furthermore, they understood that concealing their intentions from the public would artificially inflate the prices of Renewable Innovations’ common shares or maintain existing inflated prices.

91. It was predictable that the eventual disclosure of this information, along with the realization of the risks concealed by the defendants' misstatements and omissions, would lead to a decline in the stock price of Renewable Innovations' common shares. Consequently, the conduct of the defendants, as alleged in this case, directly caused foreseeable losses to the plaintiffs and the class members who purchased or acquired Renewable Innovations' common shares during the Class Period. As a result, the actions of the defendants, as outlined in this case, directly triggered anticipated losses for the plaintiffs and the class members who acquired Renewable Innovations' common stock.

92. The economic losses, i.e., damages, suffered by Plaintiffs and the Class are direct

and foreseeable results of: (i) Defendants' materially false or misleading statements and omissions of material fact; (ii) the perpetuation of the fraudulent scheme; and (iii) the subsequent declines in the prices of Renewable Innovations' common shares when the truth was revealed upon the announcement of the delisting.

**Presumption of Reliance**

93. At all relevant times, the market for Renewable Innovations' common shares was efficient for the following reasons:

a. The common shares met the requirements for listing, and were listed and traded daily on the OTCQB, a highly efficient and automated market.

b. As a regulated issuer, Renewable Innovations filed periodic reports with the SEC.

c. Renewable Innovations regularly communicated with public investors via established market communication mechanisms, including the regular issuance of press releases on major newswire services and through other wide- ranging public disclosures, such as communications with the financial press and other similar reporting.

d. Renewable Innovations was followed by market professionals, rating agencies, and securities analysts.

94. As a result of the foregoing, the market for Renewable Innovations' common shares promptly digested current information from all publicly available sources and reflected such information in the prices of Renewable Innovations' common shares. Under these circumstances, purchasers of Renewable Innovations' common shares who purchased during the Class Period suffered similar injury through their purchase of common shares at artificially inflated prices, and a presumption of

reliance applies.

95. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their statements in violation of a duty to disclose such information.

**<u>COUNT I</u>**
**Against Defendants Mount, Barney & Renewable Innovations for Violation of Sections 10(b) of The Exchange Act and Rule 10b-5 Thereunder**

96. The Plaintiffs incorporate all of the preceding paragraphs 1 through 95 as if they were fully stated here.

97. Defendants Mount, Barney and Renewable Innovations participated in a course of conduct involving misrepresentation and concealment of adverse material information about the continued listing of the common shares of Renewable Innovations as specified herein.

98. Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of fraudulent conduct as alleged herein in an effort to assure investors of the continued listing of Renewable Innovations' securities, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statement made about listing of the shares, in light of the circumstances under which they were made, not misleading. This conduct operated as a fraud and deceit upon the purchasers of Renewable Innovations' common shares during the Class Period.

99. Defendants are liable as direct participants in the wrongs complained of herein.

100. Had Plaintiffs and the other members of the Class known of the material adverse information not disclosed by Defendants, or had they been aware of Defendants' material

misstatements, they would not have purchased Renewable Innovations' common shares at artificially inflated prices.

101. Plaintiffs and the Class were injured because the risks that materialized were risks of which they were unaware as a result of Defendants' misrepresentations, omissions, and other fraudulent conduct alleged herein. The material decline in the price of Renewable Innovations' common shares was caused by the public dissemination of the true facts, which were previously concealed or hidden. Absent Defendants' wrongful conduct, Plaintiffs and the Class would not have been injured.

102. The price of Renewable Innovations' common shares declined materially upon public disclosure of the true facts, which had been misrepresented or concealed, as alleged in this complaint. Plaintiffs and other members of the Class have suffered substantial damages as a result of the wrongs alleged herein.

103. By reason of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**COUNT II**
**Against Defendant FNA for Violation of Sections 10(b) of The Exchange Act and Rule 10b-5 Thereunder**

104. The Plaintiffs incorporate all of the preceding paragraphs 1 through 95 as if they were fully stated here.

105. FNA engaged in a manipulative scheme to deceive the shareholders of Renewable Innovations, Inc. and the investing public. This involved orchestrating a fraudulent transaction that was designed to benefit the Individual Defendants and FNA at the expense of the Plaintiffs and other shareholders.

106. From January 2023 to October 2024, FNA, in coordination with the individual


MORRISON LEGAL SOLUTIONS
1887 North 270 East - OREM, UTAH 84057 - 801-845-2581

Defendants, made materially false and misleading statements and omissions regarding REII's financial health, operational capabilities, and investment potential. Specifically, the Defendants:

(a) Misrepresented their actions as being in the best interests of REII shareholders.

(b) Concealed their plans to sell all of REII's valuable assets to FNA at a substantial discount, and knowingly concealed their role at a time period when REII was not publicly disclosing their negotiations with FNA.

(c) Failed to disclose their intent to prioritize the repayment of their personal loans using proceeds from the transaction to the detriment of REII's shareholders.

107. FNA, in coordination with the individual Defendants, formulated and carried out a fraudulent scheme aimed at manipulating and deceiving shareholders, which included:

(a) Artificially depressing REII's valuation through exclusive dealings with FNA, including a 90-day exclusivity agreement signed in April 2024 that precluded competing investors.

(b) Engaging an accounting firm to issue a biased "fairness opinion" that aligned with FNA's pre-arranged acquisition terms to forward the scheme and ignored the prior market capitalization that was approximately $75,000,000.

(c) Intentionally misleading shareholders about REII's stock status and viability, including touting the company's opportunities.

(d) Paying for the day-to-day operations of the Company during the due

diligence period while claiming no ownership interest in the Company during that time period;

(e) Structuring the transaction to prioritize the repayment of Defendants Mount's and Barney's personal loans, leaving other shareholders with no value or recourse.

108. Additionally, FNA's actions, in concert with the Individual Defendants, interfered with the shareholders' ability to trade their stocks and realize the value of their investments. This interference, particularly in preventing the company from complying with SEC regulations and engaging with alternative investors, equates to a violation under Rule 10b-5 of the SEC Act.

109. FNA, in collaboration with the individual defendants, conspired to hide its real agreement regarding the purchase of RII's valuable assets and intellectual property. They planned to acquire these assets at a discounted rate under terms that were favorable to FNA and its directors. The failure to disclose these crucial facts clearly deprived shareholders of vital information that directly impacted their investment decisions.

110. Plaintiffs and similarly situated shareholders suffered damages as a direct and proximate result of FNA's violations of Section 10(b) and Rule 10b-5. These damages include the total loss of their investments in REII, which has been rendered a valueless shell company.

111. By reason of the foregoing, FNA violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**COUNT III**
**Against the Individual Defendants**
**Pursuant to Section 20(a) of the Exchange Act**

112. The Plaintiffs incorporate all of the preceding paragraphs 1 through 95 as if they were fully stated here.

113. The Individual Defendants had direct involvement in the day-to-day operations of the Company and had the power to control or influence the particular statements giving rise to the securities violations as alleged herein and exercised the same.

114. As set forth above in Count I, Renewable Innovations violated Section 10(b) and Rule 10b-5 promulgated thereunder by its acts and omissions as alleged in this Complaint.

115. By virtue of his positions as Chairman, President and CEO of Renewable Innovations, and a member of the group that controlled Renewable Innovations, Defendant Mount is liable for the Company's violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as alleged in Count I, pursuant to Section 20(a) of the Exchange Act.

116. By virtue of their positions as director, CFO and secretary of Renewable Innovations, Defendant Barney is liable for the Company's violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as alleged in Count I, pursuant to Section 20(a) of the Exchange Act.

117. As a result of the deceptive practices and false and misleading statements and omissions, the market price of Renewable Innovations' common shares was artificially inflated during the Class Period. In ignorance of the materially false and misleading nature of the representations described above and the deceptive and manipulative devices employed by Defendants, Plaintiffs and the other members of the Class, in reliance on either the integrity of the market and/or directly on the statements and reports of Defendants, purchased Renewable Innovations' common shares at artificially inflated prices.

118. Directors Mount and Barney knew or should have known that their arrangement with FNA would materially benefit them, to the detriment of REII's shareholders. In fact, before the FNA deal was consummated Defendant Barney instructed Defendant Mount that the FNA deal would

create a conflict of interest with the other shareholders, but the Individual Defendants went through with the deal anyway. The individual Defendants, in collaboration with FNA, manipulated the market by intentionally failing to comply with SEC filing requirements, mismanaging the company's financial statements, and issuing misleading disclosures. As a result, RII's stock price was artificially depressed, which allowed FNA to acquire RII's assets at a significantly reduced price and under the terms which directly compensated the Individual Directors with no other benefit to the other shareholders.

119. Directors Mount and Barney coordinated and fulfilled a strategic plan, while intentionally concealing their efforts to enable a vulture investor, FNA, to acquire RII's assets at the most favorable price with a steep discount, whereby Directors Barney and Mount and FNA materially benefitted from the arrangement to the severe detriment of its unassuming shareholders.

120. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

121. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

122. The Plaintiffs and other Class members have sustained damages resulting from the infractions outlined in this Count and seek restitution for the losses incurred.

**<u>COUNT IV</u>**
**Against the FNA- Tortious Interference with Shareholder Rights**

123. The Plaintiffs incorporate all of the preceding paragraphs 1 through 95 as if they were fully stated here.

124. FNA intentionally interfered with Company shareholder's legal rights and

expectations regarding their ownership interest in the Company.

125. At all times material hereto, the Plaintiffs and other shareholders held a legally recognized right to their shares in the Company.

126. FNA intentionally interfered with the Plaintiff and class members shareholder rights in a manner that was willful and not merely accidental or negligent. FNA's improper means, as described above, were illegal, contrary to public policy, tortious, and violative of ethical business practices. FNA's actions further intentionally and knowingly impeded the Plaintiffs and class members' ability to benefit from their investments in the Company.

127. As a direct and proximate result of FNA wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with the Defendants debt deal negotiated with FNA. Plaintiffs and the other members of the Class have been damaged by the violations as described in this Count and seek recovery for the damages caused thereby.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the other members of the Class, prays for judgment as follows:

1. Declaring this action to be a proper class action maintainable pursuant to Fed. R. Civ. P. 23(b)(3) and declaring Plaintiffs to be proper Class representatives;

2. Awarding Plaintiffs and the other members of the Class damages suffered as a result of the wrongs complained of herein, together with appropriate interest;

3. Awarding Plaintiffs and the other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements;

4. Awarding Plaintiffs and the other members of the Class such other and further

relief as may be just and proper under the circumstances.

**JURY DEMAND**

Plaintiffs demand a trial by jury for all claims so triable.

DATED: January 21, 2025

COLE, SCOTT & KISSANE, P.A.
Counsel for Plaintiffs
Cole, Scott & Kissane Building
9150 South Dadeland Boulevard, Suite 1400
P.O. Box 569015
Miami, Florida 33256
Telephone (786) 268-6415
Facsimile (305) 373-2294
Primary e-mail: cody.german@csklegal.com
Alternate e-mail: nicolle.quant@csklegal.com

s/Cody German

CODY GERMAN
Florida Bar No.: 58654